IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICHOLE HOLT,

        Plaintiff,

vs.                                                               CIV 14-0024 KBM

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing (*Doc. 17*) filed on September 25, 2014, and fully briefed December 9, 2014 (*Doc. 20*). Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 9*. Having carefully reviewed the parties' submissions and the administrative record, the Court grants the motion and remands this case for further proceedings.

**I.**    **Background and Procedural History**

Plaintiff is a 34-year-old married woman with a high school education and a history of working as a convenience store clerk and waitress. Administrative Record, (AR), 49-50, 134, 142, 154, 160, 163, 165.[1] She also has a history of drug use, has used marijuana since she was a child, and testified that she obtained a medical marijuana card in order to use it legally. AR 36-37, 269, 467, 491-92. Plaintiff has two

---

[1] Documents 13-1 through 13-17 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

school-age biological children and an adult step-son, none of which live with her. AR 41, 269.

In May of 2009, Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income alleging an onset date of July 15, 2008.[2] AR 134, 142. Her applications were denied at both the initial and reconsideration stages, and she requested a hearing before an administrative law judge (ALJ). AR 6-8, 60-80, 82-83. ALJ Donna Montano held a hearing on April 12, 2012, and issued her decision on July 9, 2012. AR 10-30, 31.

Using the five-step sequential evaluation process,[3] ALJ Montano found: at Step One, Plaintiff was not engaged in substantial gainful activity; at Step Two, Plaintiff had severe impairments, including degenerative disc disease of the lumbar spine, history of pseudo seizures, a mood disorder, and a history of marijuana dependence; at Step Three, these impairments did not meet or medically equal the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C. F. R. 416. 920(d)); at Step Four, Plaintiff

---

[2] Plaintiff's application for Supplemental Security Income states an onset date of February 19, 2008. AR 134. Her application for Disability Insurance Benefits (AR 142) and her petition (*Doc. 20* at 4) identify her onset date as July 15, 2008. As the onset date is not essential to the determination of Plaintiff's motion, the Court will use the July 15, 2008 date.

[3] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If the claimant does not meet a listing, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step-Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

had the residual functional capacity (RFC) to perform light work[4] with both exertional and nonexertional limitations, but that she would not be able to perform her past relevant work. Although ALJ Montano found that Plaintiff was unable to perform past relevant work, she determined at Step Five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Accordingly, she concluded Plaintiff was not disabled within the meaning of the Social Security Act. AR 13-25. Plaintiff's request that the Appeals Council review the unfavorable decision was denied, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-5.

## II.     The Claims

Plaintiff asserts the following claims of error by the ALJ: 1) the ALJ failed to properly assess evidence from medical experts Dr. Cheryl Gratton, Ph.D, and Dr. Kirstin Bailey; and 2) she failed to address a conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles (DOT). *Doc. 20.*

## III.    Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

---

[4] While ALJ Montano does not use the term "light work," her RFC fits within the regulations' definition of "light work." AR 17; s*ee* 20 C.F.R. § 404.1567 ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)) (brackets in original).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner. *Id.* at 1214.

## IV. Discussion

As the Court remands this case based on ALJ Montano's failure to resolve the conflict between the vocational expert's testimony and the DOT, the Court will address that issue first.

### A. Conflict Between the Vocational Expert's Testimony and the DOT

At Step Five, it is the Commissioner's burden to establish that, taking into account her age, education, work experience, and RFC, work exists in significant numbers in the national economy which the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Barrett v. Astrue*, 340 Fed. App'x 481, 487 (10th Cir. 2009). An ALJ may use a vocational expert at Step Five to supply an opinion about the claimant's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

Social Security Ruling 00-04p requires that "an ALJ must inquire about and resolve any conflicts between a vocational expert's testimony regarding a job and the description of that job in the [DOT]." *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir.

4

2009). "If the [vocational expert's] . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." SSR 00-04p.

ALJ Montano's RFC states in relevant part:

> In addition, the claimant is limited to work requiring simple, repetitive tasks. The claimant would be able to sustain concentration for two hours at a time. She can have only superficial contact with co-workers and supervisors, and only occasional contact with the general public.

AR 17. Plaintiff alleges a conflict because the DOT description of the jobs identified by the vocational expert require a higher level of reasoning than a person limited to simple, repetitive tasks. The vocational expert identified three jobs that Plaintiff could perform: Surveillance Monitor, DOT number 379.367-010; Order Clerk, DOT number 209.567-014; and Telephone Information Clerk, DOT number 237.367-046. AR 53. Each of these occupations requires level-three reasoning.[5]

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit Court of Appeals found that a limitation to "simple routine work tasks" is more consistent with jobs requiring level-two reasoning and, therefore, remanded to "allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the [vocational expert]." *Id*. This case falls squarely within the

---

[5] The reasoning level for each occupation can be found in the "Definition Trailer" following the DOT description of each occupation. For example, the definition trailer for Surveillance-System Monitor, DOT 379.367-010 reads: "GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86." http://www.occupationalinfo.org/37/379367010.html. The "general educational development," or "GED," component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L). *See* APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Level-three reasoning requires applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. Level-two reasoning requires applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. *Id*.

parameters of *Hackett*.

Here, ALJ Montano relied on the vocational expert testimony that Plaintiff could perform the jobs identified without inquiring into or providing a reasonable explanation for the conflict between Plaintiff's inability to perform more than simple, repetitive tasks and the level-three reasoning required by the jobs identified by the vocational expert. Since ALJ Montano failed to investigate or provide a reasonable explanation for the conflict, the vocational expert's testimony cannot constitute substantial evidence in support of her determination of disability.

The Commissioner urges the Court to ignore the conflict in the reasoning level, arguing that the reasoning level is only one component of the GED which does not correlate to the RFC. Instead, she argues, the SVP (specific vocational preparation) corresponds to the "ability to understand, carry out, and remember simple instructions." *Doc. 23*, 10 (quoting SSR 00-4p, 2000 WL 1898704). Recently, the Honorable Magistrate Judge Stephan Vidmar addressed a similar argument by the Commissioner in *Bier v. Colvin*, 15 F.Supp.3d 1143 (D.N.M. 2014). Judge Vidmar was not persuaded and explained, "the Commissioner's argument does not meaningfully address *Hackett*, which is binding precedent in this circuit." *Id.* at 1148. I am similarly not persuaded by the Commissioner's argument.

The Commissioner further argues that Plaintiff's counsel inquired about the reasoning level, and the vocational expert responded that there was no conflict. *Doc. 23* at 11. The colloquy between counsel and the vocational expert included the following:

> ATTY: And I asked him if a reasoning level of 3 – in his opinion, is a reasoning level of 3, the requirements under that, above and beyond what would be required under simple, repetitive tasks?

**6**

> VE: Reading the definitions I really don't see it addressing simple, repetitive tasks.

AR 55-56. The vocational expert did not state there was no conflict, only that the definitions "did not address simple, repetitive tasks." The testimony, therefore, does not provide a sufficient basis for resolution of the conflict.

ALJ Montano failed to inquire about and provide a reasonable explanation for the conflict between the vocational expert testimony that Plaintiff could perform jobs with level-three reasoning, while at the same time being limited to simple, repetitive tasks, and remand on that basis is required.

### B. Consideration of Doctor's Opinions

There are three phases of evaluation that an ALJ must complete at Step Four: first, the ALJ must determine a claimant's physical and mental RFC; second, she must determine the physical and mental demands of the claimant's past relevant work; third, she must determine whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). Plaintiff alleges the ALJ failed to follow the correct legal standards at phase one by "ignoring" some of the functional limitations recognized by consulting physicians, Dr. Gratton and Dr. Bailey. *Doc. 20*, 11-12. Plaintiff's primary contention is that ALJ Montano failed to state the weight she afforded the opinions or provide a legitimate explanation for not including the doctors' specific findings in her RFC. *Id*.

Social Security Ruling 96-6p instructs that the opinions of medical and psychological consultants "must be treated as expert opinion evidence of nonexamining sources." SSR 96-6p, *1. Accordingly, an ALJ "may not ignore these opinions and must

7

explain the weight given to [them] in their decisions," and must "consider the medical opinions in the case record together with the rest of the relevant evidence." *Id*. While generally, an ALJ must give consideration to all of the medical opinions in the record, where the medical opinions are not inconsistent with the ALJ's RFC, any failure to specify the weight given to the opinion is harmless. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-66 (10th Cir. 2012).

ALJ Montano did not assign Dr. Gratton's opinions a specific weight but discussed her findings at length and provided sufficient explanations for the "proven limitations" included in her RFC. AR 19-20, 22, 23. Dr. Gratton performed a consultative examination of Plaintiff and opined that Plaintiff had ***occasional*** difficulty in carrying out simple instructions, getting along with others, and in timely completing tasks and assignments, and that she could possibly decompensate under stressful conditions. AR 268-73. ALJ Montano found it significant that Dr. Gratton's primary diagnosis was malingering, (AR 20), but nonetheless accounted for Plaintiff's difficulties with nonexertional limitations in her RFC. AR 17, 20. The Tenth Circuit has instructed:

> Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

*Keyes-Zachary*, 695 F. 3d at 1166. Since Dr. Gratton's opinions were not inconsistent with the RFC, the alleged error is harmless.

Dr. Bailey performed a medical records review on April 12, 2010, and opined that Plaintiff was experiencing a "marked"[6] impairment in concentration, persistence, and

---

[6] The regulations explain:

**8**

pace (CPP) due to the impact of her pseudoseizures. AR 410. ALJ Montano explained that she gave "great weight to the opinions of the state agency medical consultants," which included Dr. Bailey.  Plaintiff complains that the ALJ did not, however, include the marked limitation in her RFC.

ALJ Montano explained that Plaintiff's "mental impairments would impede her ability to maintain concentration and attention for extended periods (over two hours at a time)," but her ability to "draw, paint, and write, reveals that she does possess at least a basic ability to sustain attention and concentration in order to participate in such activities." AR 17. ALJ Montano also gave "great weight" to state consulting psychiatrist, Sylvia Robles-Meyers, MD, who found that Plaintiff had only moderate limitations in CPP. AR 23, 286, 290-91.  Aside from Dr. Bailey's report, there is no evidence that Plaintiff's CPP is "markedly" limited.  ALJ Montano's findings coupled with her determination that "Claimant's testimony regarding the nature of her complaints and the limitations, which she alleges results from her conditions is not entirely credible," (AR 21), provide a legitimate basis for her rejection of Dr. Bailey's finding of a "marked" limitation.

Since ALJ Montano applied the correct legal standards and her determination with regard to medical expert opinions is supported by substantial evidence, on remand, she need not revisit her assessment of the medical opinions.

Wherefore,

---

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (*Doc. 17*), is granted and this matter is remanded for further proceedings consistent with this opinion.

_____*Karen B Molzen*_____
UNITED STATES MAGISTRATE JUDGE